**MODIFY and AFFIRM; and Opinion Filed March 27, 2013.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-11-01432-CR

---

### JOHN EYAMBE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the Criminal District Court No. 1
Dallas County, Texas
Trial Court Cause No. F11-33772-H**

---

## MEMORANDUM OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

John Eyambe waived a jury and pleaded not guilty to possession of a prohibited weapon, a short-barrel firearm. *See* TEX. PENAL CODE ANN. § 46.05(a)(3) (West Supp. 2012). After finding appellant guilty, the trial court assessed punishment at three years' imprisonment, probated for three years, and a $250 fine. In a single point of error, appellant challenges the sufficiency of the evidence to support his conviction. The State asks in a cross-point of error for a modification of the trial court's judgment to reflect appellant pleaded not guilty. We modify the judgment as requested and affirm the trial court's judgment as modified.

## Background

Irving police officers, Paul Tong and Travis Huckaby, were dispatched on March 5, 2011 to investigate a domestic disturbance at an apartment located at 2434 MacArthur Boulevard. Appellant's father opened the door to the apartment and gave his consent for the officers to come inside and "make sure everyone was okay." The officers walked through the apartment and found the door to one bedroom was closed. They knocked on the bedroom door, and it was opened by appellant's brother, Mukete Eyambe. Mukete's girlfriend, Jacqueline Edwards, also was inside the room.

Huckaby testified that as he stood at the entry of the bedroom, he could see a digital scale and small black baggies scattered on the floor. He explained the baggies were consistent with the packaging of narcotics. The officers also saw marijuana stems on the floor and a large plastic bag that smelled like marijuana. Tong took Jacqueline to another room where she told Tong there had been an earlier disturbance in the apartment. Huckaby stayed with Mukete, who gave Huckaby verbal and written consent to search the bedroom. Huckaby seized the baggies, the large bag, which contained marijuana stems and residue, and several white pills identified as Seroquel that were found in the back corner of the room.

Huckaby also searched the room's two closets. He saw numerous baggies that were "still folded up like they come packaged" all over the inside of one closet. In the second closet, he found shotgun shells, more small baggies, and clothes scattered throughout the bottom of the closet. He also found a black safe on the top shelf with a sticker or magnet on the side that read "JOHN EYAMBE #32" with a picture of a basketball and what appears to be a mascot. On top of the safe, there was some mail addressed to appellant at that apartment address. Other paperwork and mail bearing appellant's name were found scattered all over the top shelf.

At one point, Jacqueline was escorted back to the bedroom to retrieve her purse. As she got her purse, she pointed at the safe and told Tong that he "needed to look in there." Tong testified Jacqueline did not specify what was inside the safe, but he described her statement as "a strong indication" for him to look in it. After obtaining a search warrant, Huckaby removed the safe from the closet and observed two large holes on the back side of the safe through which he could see the barrel of a shotgun. Tong later opened the safe at the police station where he found a "sawed-off shotgun" with a barrel length of less than eighteen inches. No usable fingerprints were found on the gun. The safe was not tested for fingerprints.

During the search of the bedroom, Mukete told Huckaby "that everything that was inside that room" belonged to appellant, who was not at the apartment. The officers learned that appellant was in jail at the time. When they got back to the station, they confirmed there was a person named "John Eyambe" with the same apartment address listed as his primary address currently in custody at the Dallas County jail.

### Sufficiency of the Evidence

Appellant contends the evidence is insufficient to prove he possessed the firearm found in the black safe. He maintains that because he did not have exclusive possession of the apartment or bedroom, the State was required to link him affirmatively to the shotgun. He claims the evidence offered by the State to connect him to the shotgun is "tenuous" and "does not support a reasonable inference that [he] possessed a prohibited weapon."

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This

standard recognizes the responsibility of the fact finder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We defer to the fact finder's credibility and weight determinations because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 326.

The trial court found appellant guilty of possession of a prohibited weapon, a short-barrel firearm. To prove beyond a reasonable doubt appellant committed the offense as charged, the State had to establish appellant intentionally or knowingly possessed a short-barrel firearm. TEX. PENAL CODE ANN. § 46.05(a)(3). "Possession" means "actual care, custody, control, or management." *Id.* § 1.07(a)(39) (West Supp. 2012). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (West 2011).

While the State must prove appellant possessed the firearm intentionally or knowingly, it does not have to prove appellant had exclusive possession of the firearm. *See Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd). Rather, joint possession is sufficient to sustain a conviction. *Id.* (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986)). When there is no evidence that the accused was in exclusive control of the place where the firearm is found, we cannot conclude or presume that the accused had knowledge of and control over the firearm "unless there are additional independent facts and circumstances which affirmatively link the accused to the [firearm]." *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011) (quoting *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)); *see also Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.). The evidence linking the accused to the firearm may be direct or circumstantial, but the State must establish beyond a reasonable doubt

- 4 -

that the accused's connection to the prohibited weapon was "more than just fortuitous." *Blackman*, 350 S.W.3d at 594; *Brown*, 911 S.W.2d at 747.

In determining whether sufficient links exist, we examine factors such as whether the firearm was in plain view, whether appellant owned or had the right to possess the residence where the firearm was found, whether he was in close proximity to the firearm and had ready access to it or whether it was found on him, whether he attempted to flee, whether his conduct indicated a consciousness of guilt, whether he had a special connection to the firearm, whether the firearm was found in an enclosed space, and whether he made incriminating statements. *Smith*, 176 S.W.3d at 916; *Bates*, 155 S.W.3d at 216–17. These links are not a "litmus test," and the "affirmative links rule" is not "an independent test of legal sufficiency." *Evans v. State*, 202 S.W.3d 158, 162 n.9 & 12 (Tex. Crim. App. 2006). They are "simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.'" *Id.* at 162 n.12. It is the "logical force" of the evidence, and not the number of links, that supports a fact finder's verdict. *Id.* at 162, 166; *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

Appellant argues that only one of the factors listed above—that the officers found the firearm in an enclosed space—is present in this case and application of the one factor with the totality of the circumstances leads to the conclusion appellant did not possess the firearm. But no set formula of facts dictates a finding of links sufficient to support an inference of knowing possession of a firearm. *Smith*, 176 S.W.3d at 916. Additionally, the absence of some of the factors is not "evidence of innocence" that must be weighed against the factors that are present. *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Based on the circumstantial evidence presented in this case, when viewed in combination and its sum

total, we conclude there are sufficient facts and circumstances to link appellant to the short-barrel firearm found in the black safe.

The evidence established that a short-barrel firearm was found in a locked safe located on the top shelf of a closet in one of the two bedrooms in the apartment. The safe had a magnet or sticker affixed to its side displaying appellant's name. Pieces of mail addressed to appellant at the apartment were found on top of and next to the safe in the bedroom closet. Other documents bearing appellant's name also were found on top of the safe and to the side of the safe on the shelf. The "Adult Information Services" printout from appellant's booking records with Dallas County, which was admitted as an exhibit, also confirmed that appellant's last known primary address as of March 2, 2011 was the same address as the apartment and matched the address shown on the mail.

Huckaby also found clothes inside the same closet as the safe. Although Mukete had been in the bedroom with his girlfriend when the officers arrived at the apartment, Huckaby stated the clothes were "not consistent with what [Mukete] would wear at all." Huckaby described Mukete as a "husky," larger gentleman. In contrast, the AIS printout listed appellant's height as six feet two inches and weight as 150 pounds. Huckaby testified the "clothing that was inside the closet" would be "consistent with what [appellant] would wear."

Huckaby testified that when he stood in the doorway to that bedroom and saw the baggies and marijuana on the floor in plain view and then began talking to Mukete about what "the narcotic baggies [were] for," Mukete told Huckaby that "everything that was inside that room was [appellant's]." Appellant argues that because Mukete had been taken into custody that day for lying to the officers, Mukete's statement to Huckaby does not connect appellant to the safe in the bedroom. But the fact that Mukete had lied and been taken into custody for "fail[ure] to I.D.

- 6 -

fugitive" was before the fact finder, and we defer to the fact finder's determinations regarding the weight to be given the inference raised by this fact. *Jackson*, 443 U.S. at 326. The fact finder was entitled to weigh this fact against appellant and in favor of the State. Further, neither Mukete nor his girlfriend was arrested that day on drug-related charges.

There is no dispute that appellant was not present at the apartment when the officers responded to the dispatch, received consent from Mukete to search the bedroom, or executed the search warrant for the locked safe. Nor was appellant present when the safe was opened at the police station. The evidence did show, however, that appellant had at least joint possession of the apartment based on the mail with appellant's name and address, the confirmation of his primary address on the booking information, and the fact that clothes consistent with what he would wear were found inside the apartment bedroom. Joint possession is sufficient to sustain a conviction if presented with additional independent facts and circumstances linking appellant to the firearm. *Blackman*, 350 S.W.3d at 595; *Smith*, 176 S.W.3d at 916. Those facts and circumstances are present here.

Viewing all the evidence in the light most favorable to the verdict, the logical force of the combined pieces of circumstantial evidence in this case, together with reasonable inferences from them, could lead a rational fact finder to determine that appellant possessed the short-barrel shotgun found in the black safe. We therefore conclude the evidence is sufficient to support appellant's conviction for possession of a prohibited weapon. We overrule appellant's sole point of error.

## Modification of the Judgment

In a single cross-point, the State asks this Court to modify the trial court's written judgment to reflect that appellant pleaded not guilty to the indictment. The judgment recites that

appellant's plea to the offense was "Guilty." The record, however, shows appellant entered a plea of not guilty to the offense charged in the indictment. The trial court accepted appellant's plea of not guilty and heard testimony from witnesses. Thus, the judgment is incorrect.

The record provides the necessary information to correct the judgment, and this Court has the authority to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 27, 28 (Tex. Crim. App. 1993). We therefore sustain the State's cross-point and modify the judgment accordingly.

We affirm the trial court's judgment as modified.

_____
MARY MURPHY
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

111432F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

JOHN EYAMBE, Appellant

No. 05-11-01432-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F11-33772-H.
Opinion delivered by Justice Murphy.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "Plea to Offense" is modified to read: "NOT GUILTY."

As modified, the judgment is **AFFIRMED**.

Judgment entered this 27th day of March, 2013.

_____
MARY MURPHY
JUSTICE